United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS McVICKER and NANCY McVICKER, | Case No. 06-4856 SC |
| Plaintiffs, | ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| BLUE SHIELD OF CALIFORNIA and SAN FRANCISCO MEDIA FAX INC. HEALTH CARE BENEFITS PLAN, | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court on the parties' cross-motions for summary judgment. See Docket Nos. 42, 46. Both parties have submitted Oppositions and Replies. See Docket Nos. 57, 62, 68, 70. For the following reasons, the Court DENIES Plaintiffs' Motion for Summary Judgment and DENIES Defendants' Motion for Summary Judgment.

## II. BACKGROUND

The plaintiffs Douglas McVicker and Nancy McVicker ("Plaintiffs") filed a complaint in federal district court for Recovery of Employee Benefits [Under] 29 U.S.C. § 1132(a)(1) and Breach of Fiduciary Duty [Under] 29 U.S.C. §§ 1109(a) and 1132(a)(2). See Compl., Docket No. 10. The Complaint alleges

that defendants Blue Shield of California ("Blue Shield") and San Francisco Media Fax Inc. Health Care Benefits Plan ("Media Fax") improperly terminated Plaintiffs' health care plan.[1]

Douglas McVicker was CEO of Media Fax and Nancy McVicker is his wife. Def.'s Mot. at 1; Pls.' Mot. at 2; Douglas McVicker Decl. ¶ 2. In 1997 Blue Shield issued an ERISA-governed group health care contract ("the Contract") to Media Fax.[2] Def.'s Mot. at 1; Pls.' Mot. at 2. The Contract funded an employer sponsored welfare benefit plan ("the Plan"). Def.'s Mot. at 3. Douglas McVicker, as the CEO, was a participant in the Plan and his wife Nancy was a beneficiary. Pls.' Mot. at 2.

The Contract provided that dues for the plan were payable on the first of each month. Martin Decl. ¶ 4; Ex. A at 033. The Contract also provided for a 30-day grace period for the payment of dues. Id. Cancellation of the Contract was permitted for nonpayment of the dues. Martin Decl., Ex. A at 087. Specifically, the Contract stated:

> Blue Shield may cancel this contract for non-payment of dues by written notice delivered to the Employer, or mailed to the Employer's last address as shown on the records of Blue Shield, stating when, not less than 15 days thereafter, such cancellation shall be effective, retroactive to the last day of the period to which dues were paid.

---

[1] Although Media Fax is a named defendant, it has not made an appearance. Plaintiffs, in their papers, only discuss Blue Shield. The Court therefore assumes that the McVickers and Blue Shield are the only real parties of interest.

[2] ERISA is the Employee Retirement Income Security Act of 1979, codified at 29 U.S.C. §§ 1001 et seq.

2

Id.

Media Fax and Douglas McVicker in his capacity as CEO failed to make payment to Blue Shield for the dues owed under the Contract for July 2002. Pls.' Mot. at 2; Def.'s Mot. at 5. In a letter dated July 17, 2002, and addressed to Douglas McVicker, Blue Shield demanded payment for July. Ware Decl. Ex. A. The letter stated, in part:

> Blue Shield's policy is that unless we resolve the delinquent status of your group's dues by the last day of the current billing period, your coverage will be cancelled for non-payment of dues. This is Blue Shield's advance notice of cancellation effective 07/01/02.

Id.

On August 6, 2002, Blue Shield cancelled the Contract after not receiving any payment from Douglas McVicker or Media Fax. Martin Decl. ¶ 11; Ex. A at 322 and 325. On August 7, 2002, Blue Shield received the dues payment from McVicker for the month of July. Def.'s Mot. at 5; Martin Decl. ¶ 13. By letter dated August 12, 2002, Blue Shield advised Media Fax/Douglas McVicker that the late payment for July 2002 was not accepted and would be refunded. Martin Decl. ¶ 15; Ex. A at 269. Plaintiffs did not dispute the cancellation, submit a request for reinstatement, or submit any other dues payments to Blue Shield. Martin Decl. ¶¶ 13, 14, 16. The only communication between Blue Shield and the McVickers after August 12, 2002, was a letter from Douglas McVicker to Blue Shield, dated July 29, 2003, asking for copies of the delinquency notice and cancellation letter. Martin Decl. ¶ 16; Ex. A at 274. Prior to Blue Shield's cancellation of the

3

1   Contract, Nancy McVicker had been diagnosed with cancer.[3]  Pls.'
2   Mot., McVicker Decl. ¶ 3.  Because of this diagnosis Plaintiffs
3   had been unable to obtain other health insurance.  Id.  In July
4   2003, almost one year after Blue Shield cancelled the Contract,
5   Nancy McVicker began treatment for the cancer.  Def.'s Mot.,
6   Murray Decl. ¶ 3; Ex. B.  Although Plaintiffs were able to obtain
7   grants and other low-cost or no-cost services for the cancer
8   treatment, Plaintiffs still had to pay out-of-pocket costs of
9   $48,594.84.  Id. ¶ 4.  Plaintiffs now seek to recover these costs
10  based on the theory that Blue Shield's notice of cancellation was
11  defective.

### III. DISCUSSION

#### A. Legal Standard

Entry of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Summary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Thus, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the

---

[3] There is no indication, and Plaintiffs do not allege, that the cancellation had anything to do with Nancy McVicker's cancer diagnosis.  Both parties agree that the cancellation was related to the timeliness of Plaintiffs' payment.

4

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In addition, entry of summary judgment in a party's favor is appropriate when there are no material issues of fact as to the essential elements of the party's claim.  Anderson, 477 U.S. at 247-49.

### B. Analysis

In their Motion Plaintiffs allege that the notice of cancellation provided by Blue Shield was defective and that they are therefore entitled to the $48,594.84 they spent on Nancy McVicker's cancer treatment.  Defendant alleges that the notice was proper and that Plaintiffs' action is barred by applicable statutes of limitations and time limitations from the Contract.

#### 1. Notice Under California Law

The California Health and Safety Code requires that a group health care service plan contain a "provision requiring the health care service plan to notify the group contract holders in writing of the cancellation of the plan contract . . . ."  Cal. Health & Safety Code § 1367.23(a).  In addition, the Code permits cancellation of a group health care service plan for "[f]ailure to pay the charge for such coverage if the subscriber has been duly notified and billed for the charge and at least 15 days has [sic] elapsed since the date of notification."  Id. § 1365(a)(1).

Plaintiffs assert that Blue Shield's cancellation was defective and therefore the policy remained in effect through the time of Nancy McVicker's cancer treatment, almost one year after the Contract was purportedly cancelled.

1    California law supports Plaintiffs' claim that improper
2 notice of cancellation may result in no cancellation:

> [W]hether an insurer's attempted cancellation of an automobile insurance policy was ineffective because the notice provided was procedurally defective, regardless of whether the insurer acted upon a valid ground for cancelling the policy. . . . is [a valid claim] by the rule in California that notices of cancellation must strictly comply with statutory directives . . . .

Mackey v. Bristol W. Ins. Serv. of Cal., Inc., 105 Cal. App. 4th 1247 1257-58 (Ct. App. 2003).

"In California, there is no such thing as substantial compliance in furnishing notice that an insurance policy has been cancelled." Id. at 1258. "Termination of coverage can only be accomplished by strict compliance with the terms of any statutory provisions applicable to cancellation." Id. "Likewise, the insurer must adhere closely to all policy provisions setting forth requirements as to the time and manner of giving notice of cancellation to the insured." Id. "If a cancellation is defective, the policy remains in effect even if the premiums are not paid." Kotlar v. Hartford Fire Ins. Co., 83 Cal. App. 4th 1116, 1121 (Ct. App. 2000).

Plaintiffs assert that notice of cancellation was defective because Blue Shield failed to provide the requisite notice period. Both California law and the Contract provide for a 15 day notice period of cancellation. See Cal. Health & Safety Code § 1365(a)(1); Martin Decl., Ex. A at 087 (stating "Blue Shield may cancel this contract for non-payment of dues by written notice . . . stating when, not less than 15 days thereafter, such

1  cancellation shall be effective . . .").

2  Plaintiffs assert that "[o]n the face of the notice given in
3  this case, Blue Shield gave Plaintiffs only 14 days and one
4  minute." Pls.' Mot. at 4. Both parties appear to concede that
5  notice of the cancellation was initially provided by Blue Shield
6  in the July 17, 2002, letter.[4] The letter stated that Plaintiffs'
7  payment must be received by "the last day of the current billing
8  period." Ware Decl. Ex. A.

9  Although it is unclear, it appears that the billing period
10 expired on August 1, 2002. In Plaintiffs' deposition of Blue
11 Shield representative Kim Martin, the following exchange took
12 place:

13     Question: And the last day of that
       billing period is when?
14     Answer: The last day of July. August
       1st.
15     Question: I notice your counsel was
       just giving you that answer, but you
16     first said July. I understand. The
       records speak for themselves.
17     Answer: Well, we talked about that
       earlier where it's midnight. The
18     billing period is July to August 1st of
       midnight.
19     Question: I really have to ask you not
       to whisper to the witness. That's just
20     not fair. I think I understand what
       you're saying. What you're saying is
21     that the current billing period we are

---

[4] Plaintiffs state: "By letter dated July 17, 2002, Blue Shield endeavored to cancel Plaintiffs' coverage for nonpayment of dues." Pls.' Mot. at 2. Plaintiffs later indicate, however, that they might not have received the letter until July 18, 2002. Regardless of whether notice was received on July 17 or July 18, Plaintiffs clearly state that "notice of cancellation here was ineffective because it gave only 14 days notice (and one minute,) and therefore Plaintiffs' coverage was automatically renewed and in full force and effect when Plaintiffs had to pay for Mrs. McVicker's cancer treatment." Pls.' Mot. at 5.

```
                    dealing with here goes through one
                    minute in to August 1st.  Is that true?
                    Answer:  That's how--when we described
                    it earlier, it's to midnight.
                    Question:  So it gives them--it gives
                    them until 12:01 a.m.--the billing
                    period that is being referred to here in
                    Exhibit 5 is 12:01 a.m. on August 1,
                    2002.  Is that a correct statement?
                    Answer:  I would have to look at the
                    contract to see the actual hour that it
                    cuts off.  Our billing period is 7/1 to
                    8/1.  Whether that cuts off at 12:01 or
                    11:59.
                    Question:  It would either cut off at
                    11:59 on July 31st, or it would cut off
                    on August 1 at 12:01 a.m.
```

Pls.' Mot., Ex. B, Martin Dep. at 57-58.  Six days after the deposition Blue Shield submitted a series of corrections that indicated that the period ended on 12:01 a.m. on August 1, 2002. Pls.' Mot., Ex. B.

Although the above exchange indicates to the Court that there is indeed confusion regarding whether the period ended on July 31st or August 1, Plaintiffs apparently concede that the period ended on August 1.  In their Motion Plaintiffs state: "As the end of the July 2002 billing period at issue here is one minute after midnight July 31, 2002 (i.e. August 1, 2002 at 12:01 a.m.[)], the notice, on its face, only gives 14 full days notice (plus one minute of the 15th day)."  Mot. at 4.  Elsewhere Plaintiffs reiterate this, stating "[t]he July 'billing period' described in [the July 17] letter ended on August 1, 2002, at 12:01 a.m."  Mot. at 2.  Therefore, the Court assumes, for purposes of the pending summary judgment motions, that the billing period did in fact end on August 1, 2002, at 12:01 a.m.

Plaintiffs assert that the one minute on August 1 does not

1 constitute a full day and Blue Shield did not therefore provide
2 the requisite 15-day notice period.  Defendants counter that even
3 though the billing period expired at 12:01 a.m. on August 1, the
4 language contained in both the Contract and the July 17 letter
5 states that payment was due "by the last day of the current
6 billing period."  Ware Decl. Ex. A.  Thus, even if the billing
7 period expired at 12:01 a.m., payment would be accepted at any
8 time on August 1 and 15-day notice period was satisfied.  Def.'s
9 Mot. at 2.

10 Contrary to Defendant's assertion, the Court cannot conceive
11 how one minute can be construed to be one day.  The language of
12 the Contract was clear that payment was due the last day of the
13 billing cycle.  Although the billing period itself may have
14 terminated one minute into the following day, the last day of the
15 period was July 31.  Accordingly, the notice of cancellation
16 provided by Blue Shield was not in compliance with California law.[5]

17 **2.   Whether Action is Time-Barred**

18 Blue Shield asserts that even if the cancellation notice was
19 defective, Blue Shield is entitled to summary judgment because
20 Plaintiffs' action is time-barred.  As noted above, Blue Shield,
21 in a letter dated July 17, 2002, provided notice to Douglas

---

[5] Blue Shield also asserts that they had an informal policy of granting extensions on late payments.  As proof of this, Blue Shield notes that the Contract was not actually cancelled until August 6.  This, however, is besides the point.  The issue is whether the notice complied with the 15-day statutory requirement. Whether Blue Shield waited several extra days after the end of the billing period before terminating the Contract does not change the fact that the July 17 letter provided Plaintiffs with less than 15 days notice.

9

McVicker that the Contract would be terminated unless payment was received by the last day of the policy period. Martin Decl., Ex. A at 270. No payment was received and on August 6, 2002, Blue Shield terminated the Contract. Martin Decl. ¶ 11; Ex. A at 322. On August 7, 2002, Blue Shield received the dues payment for the July coverage period. Martin Decl. ¶ 13; Ex. A at 303, 304. By letter dated August 12, 2002, Blue Shield advised Plaintiffs that the Contract had been cancelled and the payment for the July coverage period would be refunded as it was received after the last day of the policy period. Martin Decl. ¶ 15; Ex. A at 269. Plaintiffs filed the present action on August 11, 2006.

### a. ERISA Statute of Limitations

"California Code of Civil Procedure Section 337[] provides the applicable statute of limitations for an ERISA cause of action based on a claim for benefits under a written contractual policy in California." Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program, 222 F.3d 643, 648 (9th Cir. 2000) (en banc). Section 337 states that the statute of limitations is four years. Cal. Code Civ. P. § 337. Thus, under ERISA the statute of limitations is four years and "an ERISA action accrues either at the time benefits are actually denied or when the insured has reason to know that the claim has been denied." Wetzel, 222 F.3d at 649 (internal citations omitted).

It is undisputed that the Contract was terminated on August 6, 2002. Thus, the earliest date at which the present action began accruing was August 6, 2002. The latest possible date on which Plaintiffs would have reason to know that the Contract was

10

1 cancelled was August 12, 2002.[6] Plaintiffs filed the present
2 action on August 11, 2006. If the operative date for the accrual
3 period is August 12, 2002, then Plaintiffs are within the ERISA
4 statute of limitations by one day. If, however, the operative
5 date is before August 11, 2002, then Plaintiffs' action is time-
6 barred.

7     Blue Shield asserts that it notified Plaintiffs of the
8 cancellation by letter dated August 7, 2002. Blue Shield does not
9 have a copy of this letter but has submitted evidence that
10 indicates that such a letter was sent. Kim Martin, a Blue Shield
11 employee of 21 years, was designated as the person most
12 knowledgeable regarding the cancellation of group health care
13 contracts in 2002. Supplemental Martin Decl. ¶ 2. In a sworn
14 declaration, Martin stated:

> By letter dated August 7, 2002, Blue
> Shield advised Media Fax/Mr. McVickar
> [sic] that the Group Health Contract was
> cancelled for nonpayment retroactive to
> July 1, 2002. . . . Blue Shield did not
> keep copies of system-generated
> cancellation letters in the file, such as
> the August 7, 2002 letter . . . . The
> Activity Notes indicate that the Group
> Cancellation letter was processed on
> August 8, 2002, which means that it was
> generated (and dated) August 7, 2002.

21 Martin Decl. ¶ 12.

22   Plaintiffs object to this portion of Martin's declaration on
23 the grounds that it is hearsay.[7] Pls.' Opp'n at 4. Hearsay is an

---

[6] Plaintiffs acknowledge receipt of the August 12 letter. Pls.' Opp'n, Douglas McVicker Decl. ¶ 5.

[7] Plaintiffs also assert that "there are not the foundational facts necessary to support the 'business records' exception to the hearsay rule." Pls.' Opp'n at 4. Plaintiffs, however, have

11

out of court statement "offered into evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Nothing in this portion of the declaration is hearsay. It is instead Martin's explanation of the significance of different entries in the record and her explanation of Blue Shield's normal course of business practice. As an employee of Blue Shield for 21 years and as a Supervisor of the Small Group Billing Department, Martin is qualified to make such statements.

Plaintiffs state that they have no recollection of the August 7 letter. Pls.' Opp'n, McVicker Decl. ¶ 3. Given that the case is at summary judgment stage, the Court cannot conclude that there is no triable issue of material fact regarding the date that Plaintiffs received notice of the cancellation. Thus, the Court cannot conclude that Plaintiffs' action is barred by the four year statute of limitations.

### b.   The Contract Time Period Limitation

Blue Shield also argues in the alternative that the two year limitations period contained in the Contract bars the present action. The General Provisions section of the Contract, under the subheading "Commencement of Legal Action," states: "Any suit or action to recover benefits under this contract . . . or any other matter arising out of this contract, shall be commenced no later than two years after the date the coverage for benefits in

---

objected to the declaration of Martin, not to the records submitted by Blue Shield. The business records exception is therefore not applicable. See Fed. R. Evid. 803(6) (stating that "records of regularly conducted activity" are not excluded by the hearsay rule").

12

question were first denied." Martin Decl., Ex. A at 91.

"[I]n the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period." Order of United Commercial Travelers v. Wolfe, 331 U.S. 586, 608 (1947). Blue Shield argues that the two year time period is reasonable.

Although the Ninth Circuit has not squarely addressed this issue, it "has implied that it would allow a shorter statute of limitations for an ERISA claim if one is contained in a policy." Sousa v. Unilab Corp., 252 F. Supp. 2d 1046, 105 (E.D. Cal. August 14, 2002) (citing Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program, 222 F.3d 643, 650 (9th Cir. 2000).

The court in Sousa determined that a three year limitation period was acceptable. The court stated:

> The law does not require all statutes of limitations for ERISA claims be four years. Rather, . . . the law allows for shorter limitation periods if they are reasonable, and the Ninth Circuit has impliedly approved of a contractual three year limitation period. Because the plan's three year limitation period is allowed by law, the four year limitation period provided by statute for ERISA claims is not substituted into the Plan.

Sousa, 252 F. Supp. at 1057.

Blue Shield asks the Court to find that the two year limitation period of the Contract is reasonable. The Court declines such an invitation. Although the Ninth Circuit has

13

indicated that it would permit a shorter limitations period for an ERISA claim, the court was specifically considering a reduced limitations period of three years. See Wetzel, 222 F.3d at 650 (finding that an ERISA claim brought within the four year statute of limitations might nonetheless be barred by a three year limitations provision in the policy); see also Souza, 252 F. Supp. at 1057 (describing the Wetzel court as having "impliedly approved of a contractual three year limitation period").

A one year reduction in a four year statute of limitations period may be reasonable; halving a four year statute of limitations is a different matter. This is especially true given that the California legislature determined that a four year statute of limitations period is appropriate for written contracts and federal courts in California have approved of this statute for ERISA claims. See Cal. Code Civ. P. § 337; Wetzel, 222 F.3d at 648. The Court is unwilling to further hollow out a statute of limitations specified by the California legislature. In the absence of controlling authority stating otherwise, the Court finds the two year limitations period contained in the Contract unreasonable.

### c. Statute of Limitations for Breach of Fiduciary Duty

Plaintiffs' second cause of action is for breach of fiduciary duty under 29 U.S.C. §§ 1104(a)(1); 1109; 1132(a)(2). Defendant argues that this cause of action is barred by the three year statute of limitations for breach of fiduciary duty contained in 29 U.S.C. § 1113. Section 1113 states:

14

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of . . . three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation . . . .

29 U.S.C. § 1113.

The Tenth Circuit has squarely addressed the issue of whether § 1113 bars claims brought under § 1132. In Wright v. S.W. Bell Telephone Co., 925 F.2d 1288, 1290 (10th Cir. 1991), the court held that "the district court erred when it concluded that section 1113 was applicable to an action brought under section 1132." Id. at 1292. "Section 1113 is, in fact, only applicable to actions arising out of violations of the portion of the Act addressing fiduciary responsibilities, 29 U.S.C. §§ 1101-12." Id. The Court finds this reasoning persuasive and holds that Plaintiffs' § 1332 claim is not barred by § 1113.

In addition to their § 1332 claim, Plaintiffs' second cause of action also raises §§ 1104(a)(1) and 1109. Section 1104(a)(1) provides the definitions of fiduciary duties and § 1109 defines the liability for breach of fiduciary duty. See 29 U.S.C. §§ 1104(a)(1), 1109. The Court finds that the primary issue Plaintiffs raise is the termination of the Contract, not the financial solvency or accountability encompassed by § 1113. Therefore, § 1332 is the operative statutory basis for the claim and § 1113 is inapplicable. See Wright, 925 F.2d at 1290 (stating the plaintiff's "claim does not involve fiduciary responsibilities regarding financial solvency or accountability as contemplated by

15

section 1113. The focus of [the] complaint is on [the] <u>administration</u> of the plan's benefits, specifically, the denial of long-term disability benefits.") (emphasis in original). Therefore, the Court finds that Plaintiffs' second cause of action under § 1132 is not barred by § 1113.[8]

### 3. Grace Period

Plaintiffs assert that they were entitled to an additional 10-day grace period after the last day of the policy period. The evidence submitted by Blue Shield disproves this theory. The Contract for Media Fax was considered by Blue Shield to be a small group health care contract. Martin Decl. ¶ 5. Evidence submitted under seal by Blue Shield demonstrates that the additional 10 day grace period applied only to large group contracts or to small group contracts who had called Blue Shield seeking additional time. Supplemental Martin Decl. ¶ 6, Ex. A. As noted above, Media Fax was a small group contract and Douglas McVicker did not call Blue Shield seeking additional time to pay his bill. Thus, Plaintiffs' assertion that they were entitled to an additional 10 day grace period after the policy period had ended is not supported by the evidence.

Finally, Plaintiffs make much of the fact that because Blue Shield had previously accepted a late dues payment, the August 7 late dues payment should also have been accepted. Pls.' Opp'n at 5. Plaintiffs assert that on May 7, 2002, Blue Shield accepted a late payment. Pls.' Opp'n at 5. Blue Shield alleges that the

---

[8] Any claims Plaintiffs might bring under §§ 1104(a)(1) and 1109 are, of course, time-barred.

16

previous late payment was actually accepted on June 7, 2002. Martin Decl. ¶ 18. Either way, it is clear that Blue Shield had previously accepted a late payment on the 7th of some month and then did not accept late payment on the 7th of August.

Blue Shield has provided evidence that explains this apparent discrepancy. Blue Shield's general business practice was to delay the cancellation process "if the group contract holder called with promise of payment before steps had been taken to cancel the contract." Martin Decl. ¶ 18. Douglas McVicker called Blue Shield on the 3rd of either May or June, 2002, with the promise of a payment for the previous billing period. Id. Because of this call, Blue Shield delayed referral of the Contract for cancellation and ultimately accepted the late payment. Id. Blue Shield asserts, and Plaintiffs do not argue, that there was no such call made by Douglas McVicker or Media Fax regarding the July payment. Thus, according to Blue Shield policy, there was no additional delay in referring the Contract for cancellation. The Contract was cancelled on August 6 and Plaintiffs' payment on August 7 was rejected.

### 4. Laches and Failure to Mitigate

Defendant argues that Plaintiffs' claims are barred by the doctrine of laches because Plaintiffs waited almost four years to file the present action. This argument is not persuasive, especially considering the fact that ERISA claims are, in general, permitted within a four year statute of limitations. In addition, Blue Shield has not demonstrated that Plaintiffs' delay has in any way prejudiced Blue Shield.

17

Defendant's argument that Plaintiffs' claim is barred because Plaintiffs failed to mitigate is also without merit. Defendant asserts that Plaintiffs should have sought reinstatement of the Contract. Defendant's own August 12 cancellation letter, however, states "[r]einstatement is not available." Martin Decl. at 272. In addition, Plaintiffs were unable to secure other health insurance due to Nancy McVicker's cancer diagnosis. Finally, Plaintiffs did mitigate their expenses by obtaining grants and other low-cost or no-cost services for the cancer treatment. Because of this Plaintiffs only had to pay out-of-pocket costs of $48,594.84.

### 5. Blue Shield's Discretionary Authority

Blue Shield argues that "[t]o the extent that this case involves Blue Shield's interpretation of the relevant Group Health Contract provisions, Plaintiffs face a particularly difficult burden of proof . . . ." Mot. at 12. This case, however, does not involve Blue Shield's interpretation of the Contract provisions. Instead, the case involves the amount of time Blue Shield provided in its cancellation notice. Blue Shield's discretionary authority to interpret the terms of the Contract and determine benefit eligibility, while not disputed by the Court, is nonetheless irrelevant to the present matter.

### 6. Damages and Attorneys Fees

Plaintiffs seek damages of $48,594.84 and costs and attorneys fees. As Defendant rightly notes, however, "if the Court determines that Blue Shield's cancellation was ineffective, then the claims should be remanded to the Plan administrator for

18

processing under the terms of the Group Health Contract." Mot. at 14. The Ninth Circuit has stated that "remand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator . . . has misconstrued the Plan and applied a wrong standard to a benefits determination." Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan, 85 F.3d 455, 461 (9th Cir. 1996). Although the present case differs from Saffle in that Plaintiffs' claim was never evaluated, this fact only strengthens Blue Shield's assertion that they must be allowed to evaluate Plaintiffs' claim. Accordingly, Plaintiffs' Motion for Summary Judgment and request for damages and fees and costs is also denied.

**IV. CONCLUSION**

For the foregoing reasons, the Court DENIES Plaintiffs' Motion for Summary Judgement and DENIES Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: November 13, 2007

UNITED STATES DISTRICT JUDGE

19